UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| PHILIP G. THOMAS, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> RISKIFIED LTD., EIDO GAL, ASSAF FELDMAN, AGLIKA DOTCHEVA, EREZ SHACHAR, EYAL KISHON, AARON MANKOVSKI, TANZEEN SYED, JENNIFER CERAN, GOLDMAN SACHS & CO. LLC, J.P. MORGAN SECURITIES LLC, CREDIT SUISSE SECURITIES (USA) LLC, BARCLAYS CAPITAL INC., KEYBANC CAPITAL MARKETS INC., PIPER SANDLER & CO., TRUIST SECURITIES, INC., WILLIAM BLAIR & COMPANY, L.L.C., LOOP CAPITAL MARKETS LLC, SAMUEL A. RAMIREZ & COMPANY, INC., SIEBERT WILLIAMS SHANK & CO., LLC and STERN BROTHERS & CO., <br><br> Defendants. | Civil Action No.  1:22-cv-03545 <br><br> CLASS ACTION <br><br> COMPLAINT FOR VIOLATIONS OF THE SECURITIES ACT OF 1933 <br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br> DEMAND FOR JURY TRIAL |

Plaintiff Philip G. Thomas ("plaintiff"), individually and on behalf of all others similarly situated, by plaintiff's undersigned attorneys, for plaintiff's complaint against defendants, alleges the following based upon personal knowledge as to plaintiff and plaintiff's own acts and upon information and belief as to all other matters based on the investigation conducted by and through plaintiff's attorneys, which included, among other things, a review of U.S. Securities and Exchange Commission ("SEC") filings by Riskified Ltd. ("Riskified" or the "Company"), the Company's press releases, and analyst reports, media reports, and other publicly disclosed reports and information about the Company. Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a securities class action on behalf of all persons or entities who purchased Riskified Class A ordinary shares in or traceable to the Company's July 2021 initial public offering (the "IPO") seeking to pursue remedies under the Securities Act of 1933 (the "1933 Act").

## JURISDICTION AND VENUE

2. The claims alleged herein arise under §§11 and 15 of the 1933 Act, 15 U.S.C. §§77k and 77o. This Court has jurisdiction over the subject matter of this action pursuant to §22 of the 1933 Act, 15 U.S.C. §77v.

3. This Court has personal jurisdiction over each of the defendants and venue is proper in this District. Defendants conducted the IPO in this District, drafted the Registration Statement (defined below) in substantial part in this District, disseminated the statements alleged to be false and misleading herein into this District, and solicited purchasers of Riskified shares in this District. The Riskified shares issued in the IPO also trade in this District.

**PARTIES**

4.      Plaintiff Philip G. Thomas purchased Riskified Class A ordinary shares in or traceable to the IPO and has been damaged thereby.

5.      Defendant Riskified is an eCommerce risk management platform that uses machine learning to identify fraud.  The Company is incorporated and headquartered in Israel.  Riskified Class A ordinary shares were issued and trade in New York on the New York Stock Exchange ("NYSE") under ticker symbol "RSKD."

6.      Defendant Eido Gal ("Gal") co-founded Riskified and served as Riskified's Chief Executive Officer ("CEO") and a director at the time of the IPO.

7.      Defendant Assaf Feldman ("Feldman") co-founded Riskified and served as Riskified's Chief Technology Officer and a director at the time of the IPO.

8.      Defendant Aglika Dotcheva ("Dotcheva") served as Riskified's Chief Financial Officer ("CFO") at the time of the IPO.

9.      Defendant Erez Shachar served as a Riskified director at the time of the IPO.

10.     Defendant Eyal Kishon served as a Riskified director at the time of the IPO.

11.     Defendant Aaron Mankovski served as a Riskified director at the time of the IPO.

12.     Defendant Tanzeen Syed served as a Riskified director at the time of the IPO.

13.     Defendant Jennifer Ceran served as a Riskified director at the time of the IPO.

14.     The defendants identified in ¶¶6-13 are referred to herein as the "Individual Defendants."  Each of the Individual Defendants signed the Registration Statement.  In addition, the Individual Defendants each participated in the solicitation and sale of Riskified Class A ordinary shares to investors in the IPO for their own benefit and the benefit of Riskified as directors, executive officers and/or major shareholders of the Company.

15.     Defendants Goldman Sachs & Co. LLC, J.P. Morgan Securities LLC, Credit Suisse Securities (USA) LLC, Barclays Capital Inc., KeyBanc Capital Markets Inc., Piper Sandler & Co., Truist Securities, Inc., William Blair & Company, L.L.C., Loop Capital Markets LLC, Samuel A. Ramirez & Company, Inc., Siebert Williams Shank & Co., LLC and Stern Brothers & Co. are referred to herein as the "Underwriter Defendants." Pursuant to the 1933 Act, the Underwriter Defendants are liable for the materially false and misleading statements in the Registration Statement as follows:

(a)     The Underwriter Defendants are investment banking houses that specialize in, *inter alia*, underwriting public offerings of securities. They served as the underwriters of the IPO and shared over $26 million in fees collectively for their services. The Underwriter Defendants determined that in return for their share of the IPO proceeds, they were willing to solicit purchases of Riskified Class A ordinary shares in the IPO. Each of the Underwriter Defendants designated personnel to the IPO working group, including investment bankers, analysts, associates and counsel, to market Riskified Class A ordinary shares, and those personnel worked on and approved the content of Riskified's Registration Statement and other offering materials.

(b)     The Underwriter Defendants demanded and obtained an agreement from Riskified that Riskified would indemnify and hold the Underwriter Defendants harmless from any liability under the federal securities laws. They also made certain that Riskified had purchased millions of dollars in directors' and officers' liability insurance.

(c)     Representatives of the Underwriter Defendants also assisted Riskified and the Individual Defendants in planning the IPO and purportedly conducted an adequate and reasonable investigation into the business and operations of Riskified, an undertaking known as a "due diligence" investigation. The due diligence investigation was required of the Underwriter

Defendants in order to engage in the IPO. During the course of their "due diligence," the Underwriter Defendants had continual access to confidential corporate information concerning Riskified's operations and financial prospects.

(d) In addition to availing themselves of virtually unbridled access to internal corporate documents, agents of the Underwriter Defendants met with Riskified's management, top executives, and outside counsel and engaged in "drafting sessions" in advance of the IPO. During these sessions, understandings were reached as to: (i) the strategy to best accomplish the IPO; (ii) the terms of the IPO, including the price range at which Riskified Class A ordinary shares would be sold; (iii) the language to be used in the Registration Statement; and (iv) what disclosures about Riskified would be made in the Registration Statement. As a result of those constant contacts and communications between the Underwriter Defendants' representatives and Riskified's management and top executives, such as the Individual Defendants, the Underwriter Defendants knew, or should have known, of Riskified's existing problems as detailed herein.

(e) The Underwriter Defendants solicited and sold in the IPO Riskified Class A ordinary shares to plaintiff and other members of the Class. The Underwriter Defendants' failure to conduct an adequate due diligence investigation was a substantial factor leading to the harm complained of herein.

**SUBSTANTIVE ALLEGATIONS**

16. Riskified operates a risk management platform that utilizes machine learning to protect its merchant-clients from fraud. Riskified's proprietary machine learning platform purportedly identifies the individual behind each online interaction, helping Riskified's customers, who consist of online merchants, eliminate risk and uncertainty from their business.

17. Riskified charges merchants a percentage of every dollar of Gross Merchandise Value ("GMV") that it approves (*i.e.*, is deemed non-fraudulent by Riskified's proprietary fraud-detection

software).  If an approved transaction results in a chargeback (a charge reversal that occurs when a cardholder disputes a transaction), Riskified reimburses the merchant for the amount of the lost sale as part of its "chargeback guarantee."

18. Leading up to the IPO, Riskified claimed that it was experiencing tremendous revenue growth, stating that its revenue grew 55% in the first quarter of 2021 compared to the first quarter of 2020.  Further, Riskified stated that its GMV grew 77%, gross profit grew 65%, and adjusted EBITDA went from a $3.1 million loss to a $296,000 loss, respectively, from the first quarter of 2020 to the first quarter of 2021.

19. On July 1, 2021, the Company filed with the SEC a registration statement on Form F-1 for the IPO, which, after several amendments, was declared effective on July 28, 2021 (the "Registration Statement").  On July 30, 2021, the Company filed with the SEC a prospectus for the IPO on Form 424B4, which was incorporated into and formed part of the Registration Statement. The Registration Statement was used to sell to the investing public 20.125 million Riskified Class A ordinary shares at $21 per share, generating over $422 million in gross proceeds.  These sales included 200,000 shares sold by defendant Feldman, Riskified's co-founder and its Chief Technology Officer and a director at the time of the IPO, generating $4.2 million in gross proceeds for himself.

### MATERIALLY FALSE AND MISLEADING STATEMENTS AND OMISSIONS IN THE REGISTRATION STATEMENT

20. The Registration Statement was negligently prepared and, as a result, contained untrue statements of material fact, omitted material facts necessary to make the statements contained therein not misleading, and failed to make adequate disclosures required under the rules and regulations governing the preparation of such documents.

21. Specifically, the Registration Statement created the misleading impression that Riskified's machine learning platform had minimized expenses due to chargebacks caused by errors in its platform and was improving as the Company expanded its business network. For example, the Registration Statement described how "as [Riskified] add[s] more GMV, we collect more data, which strengthens the predictive power of our decisioning engine and fuels product innovation." The Registration Statement similarly stated that Riskified's machine learning benefits from a global merchant network and helps merchants "eliminate risk and uncertainty from their business," employed features that "evolve dynamically as we receive more data," and utilized "[m]ulti-tiered modeling" that "improves our overall accuracy." With respect to the onboarding of new merchants, the Registration Statement stated: "As [Riskified] scale[s], [it] employ[s] multiple control groups to monitor the performance of our algorithms," allowing the Company "to spot potential data drift and quickly retrain models to new populations" and "preserve accuracy throughout our network." Similarly, the Registration Statement repeatedly highlighted how Riskified's eCommerce risk management platform purportedly fueled a powerful flywheel effect, which further minimized the risk of platform errors.

22. The Registration Statement cited this "powerful flywheel effect" as a competitive advantage that set Riskified apart from other fraud platforms. According to the Registration Statement, the Company's risk management platform "gets stronger from each transaction we process and each merchant we add to our network." The Registration Statement also added that "[e]ach transaction we review enhances our data sets and our ability to identify similar characteristics between transactions on our network." According to the Registration Statement, "this sophisticated transaction matching enable[d] [Riskified] to deliver a strong return on investment for our merchants and drives robust product innovation that enhances the consumer shopping

experience." The Registration Statement continued: "We then leverage this improved [return on investment] for our merchants and our enhanced product suite to attract more merchants, which drives more transactions to our platform and fuels further organic growth."

23. The Registration Statement further stated that, as Riskified's fraud detection systems had improved, the Company's chargebacks had lessened and its gross profit margin had surged over time, stating in pertinent part as follows:

> We have grown and scaled our business rapidly in recent periods. Between 2018 and 2020, our revenue grew at a CAGR of 51% from $74.3 million for the year ended December 31, 2018 to $169.7 million for the year ended December 31, 2020. Our gross profit grew from $35.7 million for the year ended December 31, 2018 to $92.8 million for the year ended December 31, 2020 and gross profit margin grew from 48% for the year ended December 31, 2018 to 55% for the year ended December 31, 2020. ***Our gross profit grew from $17.5 million for the three months ended March 31, 2020 to $28.6 million for the three months ended March 31, 2021 and gross profit margin grew from 53% for the three months ended March 31, 2020 to 56% for the three months ended March 31, 2021***.

24. Similarly, the Registration Statement claimed that these trends had continued at the time of the IPO, providing the following update:

> For the three months ended June 30, 2021, we expect gross profit to be between $30.1 million and $33.7 million, as compared to gross profit of $20.1 million for the three months ended June 30, 2020. The improvement in gross profit is due to the improvements in revenue noted above partially offset by increases in cost of revenue primarily due to increases in net chargeback expenses driven by an increase in GMV, a trend we expect to continue as GMV grows. ***We expect our gross profit margin to improve due to improvements in our chargebacks-to-billings ratio, or CTB Ratio, due to a shift in the merchant mix of our revenues and fraud trends***.

25. The Registration Statement asserted that Riskified has accumulated over "a billion historical transactions from our merchant network" which had led to "our machine learning models creat[ing] powerful, real-time predictive insights that we believe are difficult to replicate."

26. The Registration Statement also stated that Riskified had "established strict processes that allow us to manage our overall chargeback exposure and control realized chargeback expenses within predetermined budget levels." Further, the Registration Statement claimed that the Company

"constantly adjust[s its] merchants' approval and chargeback rates to rebalance exposure and our expected expenses during any given period."

27. The Registration Statement further represented that Riskified had "established strict processes that allow [the Company] to manage our overall chargeback exposure and control chargeback expenses within predetermined budget levels." The Registration Statement described how Riskified was purportedly "able to control the chargeback expense" the Company incurs, claiming that Riskified had been able to reduce chargebacks as a percentage of its billings from 42% in 2019 to 37% in 2020, which had "helped drive gross profit margin expansion." The Registration Statement added that chargebacks at Riskified as a percentage of billings continued to decrease at the time of the IPO, purportedly decreasing from 45% for the three months ended March 31, 2020 to just 37% for the three months ended March 31, 2021. The Registration Statement similarly asserted that "[a]s of March 31, 2021, [Riskified's] portfolio of potential chargeback liabilities was diversified across a number of industries, hundreds of merchants and millions of individual transactions."

28. In addition, the Registration Statement stated that Riskified's "models are trained on a large and diverse population of historical chargeback transactions accumulated since our founding," which had "increas[ed] the accuracy of our eCommerce risk management platform." The Registration Statement stated that Riskified's "chargeback expenses become less volatile over time as we scale." The Registration Statement further represented that the Company had diversified its risk, stating that, "[a]s of December 31, 2020, our portfolio of potential chargeback liabilities was diversified across a number of industries, hundreds of merchants and millions of individual transactions," which "significantly reduces the likelihood of material unexpected chargeback expenses."

29. The statements in ¶¶21-28, above, were inaccurate statements of material fact because they failed to disclose the following adverse facts that existed at the time of the IPO:

(a) that as Riskified expanded its user base, the quality of the Company's machine learning platform had deteriorated (rather than improved as represented in the Registration Statement), because of, among other things, inaccuracies in the algorithms associated with onboarding new merchants and entering new geographies and industries;

(b) that Riskified had expanded its customer base into industries with relatively high rates of fraud – including partnerships with cryptocurrency and remittance business – in which the Company had limited experience and that this expansion has negatively impacted the effectiveness of the Company's machine learning platform;

(c) that, as a result of (a)-(b) above, Riskified was suffering from materially higher chargebacks and cost of revenue and depressed gross profits and gross profit margins during its third fiscal quarter of 2021; and

(d) that, as a result of (a)-(c) above, the Registration Statement's representations regarding Riskified's historical financial and operational metrics and purported market opportunities did not accurately reflect the actual business, operations, and financial results and trajectory of the Company prior to and at the time of the IPO, and were materially false and misleading, and lacked a factual basis.

30. Furthermore, Item 303 of SEC Regulation S-K, 17 C.F.R. §229.303(b)(2)(ii) ("Item 303"), required defendants to "[d]escribe any known trends or uncertainties that have had or that are reasonably likely to have a material favorable or unfavorable impact on net sales or revenues or income from continuing operations." Similarly, Item 105 of SEC Regulation S-K, 17 C.F.R. §229.105 ("Item 105"), required, in the "Risk Factors" section of registration statements and

prospectuses, "a discussion of the material factors that make an investment in the registrant or offering speculative or risky" and required each risk factor to "adequately describe[] the risk."

31. The failure of the Registration Statement to disclose that Riskified's artificial intelligence was not as effective in limiting chargebacks as claimed and had in fact deteriorated as the business grew, leading to materially adverse impacts to the Company's financial results, violated Item 303, because these undisclosed facts were known to defendants and would (and did) have an unfavorable impact on the Company's sales, revenues and income from continuing operations. This failure also violated Item 105, because these adverse facts created significant risks that were not disclosed even though they were some of the most significant factors that made an investment in Riskified shares speculative or risky.

32. Indeed, the risk factors that were provided in the Registration Statement were themselves materially misleading because they provided generic statements of potential or contingent risk, yet failed to disclose that the potential future adverse impacts described therein were already occurring. For example, the Registration Statement stated that "[i]f our machine learning models fail to accurately detect fraud, or any of the other components of our automated decisioning process fail, we *may* experience higher than forecasted chargebacks" which "*may*" lead to Riskified's business, financial condition and results of operations being adversely affected. Yet, the Registration Statement failed to disclose that Riskified's machine learning platform was *already* faltering as the Company entered new geographies and industries with higher incidents of fraud, leading to a higher chargeback expense and worse gross margins than the historical figures represented in the Registration Statement. The Registration Statement's omission of adverse facts regarding Riskified's risk management platform rendered the discussion of possible future contingent risks themselves materially false and misleading.

## EVENTS FOLLOWING THE IPO

33.     On September 9, 2021, Riskified issued a press release announcing the Company's financial results for the second quarter ended June 30, 2021 – *i.e.*, the quarter *prior to* the IPO. On a conference call to discuss the results, defendant Dotcheva stated that Riskified tended "to experience higher chargebacks when we enter a new industry."

34.     On November 16, 2021, Riskified issued a press release announcing the Company's financial results for the third quarter ended September 30, 2021 – *i.e.*, the quarter *during which* the IPO was conducted. The release reported that Riskified's revenue growth had declined to 26% year-over-year, compared to 55% and 47% revenue growth year-over-year for the first and second quarters of 2021 respectively. Similarly, Riskified's GMV growth had declined to 28% year-over-year compared to 77% and 55% respectively for the first two quarters of 2021. Moreover, the Company's gross profits had increased only 10% year-over-year, far below the Company's already decelerated revenue growth trajectory. The Company's gross profit margins had plummeted to just 46% during the quarter, compared to 56% and 60% in the first and second quarter of 2021 respectively, as gross profit *fell* sequentially to $24.3 million compared to $28.6 million and $33.3 million in the first and second quarters of 2021 respectively. Further, Riskified's cost of revenue had jumped to *$28.3 million* in the third quarter of 2021, primarily as a result of a sharp increase in chargeback expenses, representing a *50% increase* year-over-year and nearly 30% above the Company's cost of revenue for the first and second quarters of 2021.

35.     Also on November 16, 2021, Riskified hosted an earnings call to discuss the results. During the call, defendant Dotcheva blamed the Company's growing merchant base as a primary cause of increased chargebacks, stating that Riskified had "onboarded several new large merchants as well as merchants from new industries to us, such as Payments, which changed our merchant portfolio mix and overall risk levels." In response to analyst questions, defendant Dotcheva stated

- 11 -

that these increased chargebacks were "expected" and "definitely aligned to our expectations" (even though they had not been disclosed to investors in the Registration Statement) and, further were expected to "continue to affect us in the future" as the Company grew with "new merchants, . . . new industries, [and] new geographic trends." He later added that "merchant leaks and the portfolio of merchants that we've added and additional factories as we're getting into payments . . . has impacted Q3." Similarly, defendant Gal stated that, during the quarter, Riskified "had a more pronounced impact from new categories like remittance and crypto, which we anticipate will kind of normalize over time as our machine learning models get better."

36.     On February 23, 2022, Riskified issued a press release announcing the Company's financial results for the fourth quarter and year ended December 31, 2021. The release reported that Riskified's revenue growth and GMV growth had continued to decelerate during the quarter to just 22% and 23%, respectively, year-over-year. Further, Riskified's gross profit growth remained muted, at just 10.7% year-over-year-growth during the quarter, and the Company's cost of revenue had continued to climb to more than $33 million during the quarter compared to just $23.9 million during the fourth quarter of 2020. In addition, the release stated that Riskified expected to generate only between $254 million and $257 million in 2022 revenues (which would represent only 11.5% year-over-year growth) and an adjusted 2022 EBITDA of between negative $69 million and $66 million (which would more than *triple* the losses suffered by the Company in 2021), indicating that the adverse business trends being suffered by the Company were in fact accelerating.

37.     Also on February 23, 2022, Riskified hosted an earnings call to discuss the results. During the call, defendant Dotcheva stated that the year-over-year decline in gross profit margin experienced by the Company during the fourth quarter (53% compared to 58% the prior year period) "was driven primarily by [Riskified's] expansion into new industries and regions, increase of the

tickets in travel industry as a percentage of total billings as well as the onboarding of new merchants." Defendant Dotcheva also stated that the Company's expected gross margin for 2022 would be only "at or above 51%."

38. At the time of the filing of this complaint, Riskified Class A shares traded below $6 per share, more than **70%** below the IPO price.

## CLASS ACTION ALLEGATIONS

39. Plaintiff brings this action as a class action on behalf of all persons or entities who purchased Riskified's Class A ordinary shares in or traceable the IPO (the "Class"). Excluded from the Class are defendants and their families, the officers, directors and affiliates of the defendants, at all relevant times, and members of their immediate families, and their legal representatives, heirs, successors, or assigns and any entity in which defendants have or had a controlling interest.

40. The members of the Class are so numerous that joinder of all members is impracticable. Riskified's Class A ordinary shares are actively traded on the NYSE and millions of shares were sold in the IPO. While the exact number of Class members is unknown to plaintiff at this time and can only be ascertained through appropriate discovery, plaintiff believes that there are hundreds of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Riskified or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions, including being given an opportunity to exclude themselves from the Class.

41. Plaintiff's claims are typical of the claims of the members of the Class, as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law as complained of herein.

42. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

43. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a) whether defendants violated the 1933 Act;

(b) whether statements made by defendants to the investing public in the Registration Statement misrepresented material facts about the business, operations and risks of investing in Riskified; and

(c) to what extent the members of the Class have sustained damages and the proper measure of damages.

44. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## COUNT I

### For Violation of §11 of the 1933 Act
### Against All Defendants

45. Plaintiff repeats and realleges ¶¶1-44 by reference.

46. This Count is brought pursuant to §11 of the 1933 Act, 15 U.S.C. §77k, on behalf of the Class, against all defendants.

47. This Count does not sound in fraud. Plaintiff does not allege that any of the defendants had scienter or fraudulent intent, which are not elements of a §11 claim.

48. The Registration Statement for the IPO was inaccurate and misleading, contained untrue statements of material fact, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

49. The defendants named herein were responsible for the contents and dissemination of the Registration Statement as signatories and/or directors of the Company or as the underwriters of the IPO.

50. Riskified is the registrant for the IPO. As the issuer of the shares, Riskified is strictly liable to plaintiff and the Class for the misstatements and omissions.

51. None of the defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement were true and without omissions of any material facts and were not misleading.

52. By reason of the conduct alleged herein, each defendant violated, and/or controlled a person who violated, §11 of the 1933 Act.

53. Plaintiff purchased Riskified Class A ordinary shares registered pursuant to the Registration Statement and traceable to the IPO.

54. Plaintiff and the Class have sustained damages. The value of Riskified Class A ordinary shares has declined substantially subsequent to and due to defendants' violations.

55. At the time of their purchases of Riskified Class A ordinary shares, plaintiff and other members of the Class were without knowledge of the facts concerning the wrongful conduct alleged herein. Less than one year has elapsed from the time that plaintiff discovered or reasonably could have discovered the facts upon which this complaint is based to the time that plaintiff filed this complaint. Less than three years have elapsed between the time that the securities upon which this Count is brought were offered to the public and the time plaintiff filed this complaint.

## COUNT II

### For Violation of §15 of the 1933 Act
### Against Riskified and the Individual Defendants

56. Plaintiff repeats and realleges ¶¶1-55 by reference.

57. This Count is brought pursuant to §15 of the 1933 Act against Riskified and the Individual Defendants.

58. The Individual Defendants controlled Riskified at the time of the IPO by virtue of their dominant voting power and status as the Company's controlling shareholders, directors and/or senior officers. The Individual Defendants each had a series of direct and/or indirect business and/or personal relationships with other directors and/or officers and/or major shareholders of Riskified.

59. Defendant Riskified controlled the Individual Defendants and all of its employees.

60. The defendants named herein each were culpable participants in the violations of §11 of the 1933 Act alleged in the Count above, based on their participation in the Company's reporting on financial and operational results to investors, having signed or authorized the signing of the Registration Statement, selling Riskified Class A ordinary shares in the IPO and/or having otherwise participated in the process that allowed the IPO to be successfully completed.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for relief and judgment as follows:

A. Determining that this action is a proper class action, designating plaintiff as Lead Plaintiff and certifying plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and plaintiff's counsel as Lead Counsel;

B. Awarding compensatory damages in favor of plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.  Awarding plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

D.  Awarding such equitable/injunctive or other relief as the Court may deem just and proper, including permitting any putative Class members to exclude themselves by requesting exclusion through noticed procedures.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury.

DATED: May 2, 2022

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN
VICKI MULTER DIAMOND

*s/ Samuel H. Rudman*
SAMUEL H. RUDMAN

58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
vdiamond@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
BRIAN E. COCHRAN
200 South Wacker Drive, 31st Floor
Chicago, IL  60606
Telephone:  312/674-4674
312/674-4676 (fax)
bcochran@rgrdlaw.com

JOHNSON FISTEL, LLP
RALPH M. STONE
1700 Broadway, 41st Floor
New York, NY  10019
Telephone:  212/292-5690
212/292-5680 (fax)
ralphs@johnsonfistel.com

Attorneys for Plaintiff

## CERTIFICATION OF NAMED PLAINTIFF
## PURSUANT TO FEDERAL SECURITIES LAWS

Philip G. Thomas ("Plaintiff") declares:

1. Plaintiff has reviewed a complaint and authorized its filing.

2. Plaintiff did not acquire the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action or any other litigation under the federal securities laws.

3. Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4. Plaintiff has made the following transaction(s) during the Class Period in the securities that are the subject of this action: *See* attached Schedule A.

5. Plaintiff has not sought to serve or served as a representative party in a class action that was filed under the federal securities laws within the three-year period prior to the date of this Certification except as detailed below:

None.

6. Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 13 day of April, 2022.

DocuSigned by:

_____
Philip G. Thomas

## SCHEDULE A

## SECURITIES TRANSACTIONS

**Stock**

| Date Acquired | Amount of Shares Acquired | Price |
|---|---|---|
| 09/15/2021 | 272 | $25.72 |
| 10/12/2021 | 98 | $17.80 |
| 10/12/2021 | 98 | $17.92 |
| 10/12/2021 | 66 | $17.92 |
| 10/12/2021 | 98 | $18.02 |
| 11/16/2021 | 364 | $13.65 |
| 11/17/2021 | 151 | $12.80 |

Prices listed are rounded up to two decimal places.