PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

1285 AVENUE OF THE AMERICAS          NEW YORK, NEW YORK 10019-6064
TELEPHONE (212) 373-3000

UNIT 5201, FORTUNE FINANCIAL CENTER
5 DONGSANHUAN ZHONGLU
CHAOYANG DISTRICT, BEIJING 100020, CHINA
TELEPHONE (86-10) 5828-6300

SUITES 3601 – 3606 & 3610
36/F, GLOUCESTER TOWER
THE LANDMARK
15 QUEEN'S ROAD, CENTRAL
HONG KONG
TELEPHONE (852) 2846-0300

ALDER CASTLE
10 NOBLE STREET
LONDON EC2V 7JU, UNITED KINGDOM
TELEPHONE (44 20) 7367 1600

535 MISSION STREET, 24TH FLOOR
SAN FRANCISCO, CA 94105
TELEPHONE (628) 432-5100

FUKOKU SEIMEI BUILDING
2-2 UCHISAIWAICHO 2-CHOME
CHIYODA-KU, TOKYO 100-0011, JAPAN
TELEPHONE (81-3) 3597-8101

TORONTO-DOMINION CENTRE
77 KING STREET WEST, SUITE 3100
P.O. BOX 226
TORONTO, ONTARIO M5K 1J3
TELEPHONE (416) 504-0520

2001 K STREET, NW
WASHINGTON, DC 20006-1047
TELEPHONE (202) 223-7300

500 DELAWARE AVENUE, SUITE 200
POST OFFICE BOX 32
WILMINGTON, DE 19899-0032
TELEPHONE (302) 655-4410

WRITER'S DIRECT DIAL NUMBER

(212) 373-3289

WRITER'S DIRECT FACSIMILE

(212) 492-0289

WRITER'S DIRECT E-MAIL ADDRESS

asoloway@paulweiss.com

May 2, 2023

**By ECF**

The Honorable Denise Cote
United States District Judge
United States District Court for the
Southern District of New York
500 Pearl Street, Room 1910
New York, NY 10007

                    *In re Riskified Ltd. Securities Litigation*, No. 1:22-cv-03545-DLC

Dear Judge Cote:

     We represent defendants Riskified Ltd., Eido Gal, Assaf Feldman, Aglika Dotcheva, Erez Shachar, Eyal Kishon, Aaron Mankovski, Tanzeen Syed, and Jennifer Ceran in the above-referenced action. We write to provide the Court with notice of a recent decision in this District that supports Defendants' arguments, set forth in the pending motion to dismiss (ECF No. 78). A copy of this decision, *Gomez* v. *Credit Suisse AG*, No. 22-cv-115 (JPC)(BCM), 2023 WL 2744415 (S.D.N.Y. Mar. 31, 2023), is attached as Exhibit A.

     Among other issues, *Gomez* addresses the adequacy of the risk disclosures provided by an issuer of exchange-traded notes ("ETNs"). It was uncontroverted that the issuer had warned about the general risks of the ETNs, including the issuer's discretion to suspend further issuance of the ETNs and/or to delist them at any time, as well as the risk that doing so could affect supply and demand of the ETNs, either by adversely affecting the price in the secondary market due to liquidity constraints, or by causing the ETNs to trade at a premium due to a market imbalance resulting from a decrease in supply. Ex. A at *1–3. When the defendant later announced its decision to suspend and delist the ETNs, the ETNs began trading at a significant premium, causing significant losses to plaintiff, who held short positions in the ETNs. *Id.* at *1, *4–5. Referring to this phenomenon as a "short squeeze," the plaintiff argued that the "general conditional warnings of events that may occur in the future are insufficient" because "a ***specific risk had materialized***, in the form [of] an ***imminent*** short squeeze." *Id.* at *8–9 (emphasis added).

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Honorable Judge Cote                                                                 2

Judge Cronan rejected this argument in light of the defendant's "repeated, extensive, and explicit prior disclosures of the investment risk," reasoning that the "essential question" was whether "more detailed warnings were required." *Id.*    He explained that "the securities laws do not require issuers to predict the precise manner in which disclosed risks will manifest themselves." *Id.* at *9.   Because the "[d]efendant explicitly warned that supply and demand forces ***could*** cause the price of [the ETNs] to rise above its indicative value—which is exactly what occurred . . . the warnings in the Offering Documents and the Press Release were directly on point" and nothing more was required. *Id.* at *10 (emphasis added).

This ruling supports Defendants' motion to dismiss.   In this case, Defendants explicitly warned investors that factors such merchant mix, seasonality, and the time required for Riskified's machine learning to "learn" new clients could impact chargebacks, and cause Riskified's chargeback ratios and gross profit margins to "fluctuate from period to period." (*See* MTD Br. at 10–11, 13–14, 21 (ECF No. 79); MTD Reply 3–4, 8 (ECF No. 85).)  Plaintiff alleges that these risk disclosures were inadequate because Defendants failed to disclose precisely how those risks may manifest in the quarter of the IPO, namely, that chargebacks would increase short-term as a result of seasonal travel and new clients. As in *Gomez*, Defendants' disclosures expressly warned that these very factors could cause higher chargebacks and fluctuations in margins quarter to quarter, and Defendants had no duty to "predict the precise manner in which disclosed risks will manifest themselves" for the particular quarter of the IPO (which still had two months to be completed).

We appreciate the Court's consideration of this supplemental authority.

Respectfully submitted,

*/s/ Audra J. Soloway*

Audra J. Soloway

cc:      Counsel of record (via ECF)