UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE RISKIFIED LTD. SECURITIES LITIGATION | Case No. 1:22-cv-03545-DLC |

**PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW
UNDER 15 U.S.C. § 78u-4(c)(1) REGARDING PLAINTIFFS' AND
LEAD COUNSEL'S COMPLIANCE WITH RULE 11(b)**

Pursuant to the Court's Order dated June 23, 2023, ECF No. 94, Lead Plaintiff Craig Black and named Plaintiff Diva Joshi (together, "Plaintiffs") respectfully submit these proposed findings of fact and conclusions of law regarding Plaintiffs' and Lead Counsel's compliance with Rule 11(b) of the Federal Rules of Civil Procedure. Accompanying this submission is the Declaration of Joshua Baker, attorney at Lead Counsel The Rosen Law Firm, P.A. ("Rosen Law" or "Lead Counsel"), which is incorporated by reference and supports the following proposed findings of fact and conclusions of law.

**[PROPOSED] FINDINGS OF FACT AND CONCLUSIONS OF LAW**

1.      "Under the Private Securities Litigation Reform Act of 1995 (the 'PSLRA'), courts are required to make findings as to the compliance by all parties and attorneys with Rule 11(b), Fed. R. Civ. P., at the conclusion of all private actions arising under the Securities Exchange Act of 1934." ECF No. 94 (citing 15 U.S.C. § 78u-4(c)). In accordance with 15 U.S.C. §78u-4(c), the Court concludes, as discussed further herein, that all claims and factual contentions presented in this lawsuit by Plaintiffs and Lead Counsel were not presented for any improper purpose, were warranted by existing law or by nonfrivolous argument for extending or modifying existing law, and had evidentiary support, or would likely have had

1

evidentiary support after a reasonable opportunity for further discovery, and therefore that Plaintiffs and Lead Counsel complied with Rule 11.

2.     In their Second Amended Complaint ("SAC"), Plaintiffs alleged that Riskified, Ltd. ("Riskified"), certain of Riskified's executive officers and directors, and the underwriters of Riskified's initial public offering ("IPO")  (collectively, "Defendants") made false and misleading omissions of material fact and failed to disclose known material trends concerning the Company's "merchant mix" that were likely to, and ultimately did, result in lower profit margins in post-IPO periods. To develop and plead those facts, Plaintiffs, through Lead Counsel, conducted a thorough investigation, including retaining two reputable investigators in the U.S. and Israel, each with substantial experience in class action securities matters, a practice commonly undertaken by lead plaintiffs in securities class actions. On the belief that this research provided strong support for their allegations, Plaintiffs filed a detailed first amended complaint ("FAC"). After Defendants moved to dismiss the FAC, Plaintiffs opted to further amend their complaint in light of Defendants' arguments, ultimately filing the expanded, 218-paragraph SAC. When Defendants moved to dismiss the SAC, Plaintiffs filed a well-reasoned opposition to the motion, setting forth a legal basis for their claims that was nonfrivolous and warranted by existing law.

3.     Although the Court ruled that the statements alleged in the SAC were not actionable, the litigation was not frivolous. As demonstrated in the Baker Declaration submitted herewith, the facts alleged were based on cited sources and a robust investigation. Declaration of Joshua Baker ("Baker Decl.") ¶¶ 7-9. Plaintiffs' arguments were well-researched and based on existing precedent. This litigation reflects zealous advocacy, where

one side prevailed on a motion to dismiss—not frivolous conduct. Accordingly, the Court finds that Plaintiffs and Lead Counsel have complied with Rule 11.

## I.    Legal Standards under the PSLRA and Rule 11

4.    The Court stated in its Order dated June 23, 2023: "Under the Private Securities Litigation Reform Act of 1995 (the 'PSLRA'), courts are required to make findings as to the compliance by all parties and attorneys with Rule 11(b), Fed. R. Civ. P., at the conclusion of all private actions arising under the Securities Exchange Act of 1934." ECF No. 94 (citing 15 U.S.C. § 78u-4(c)). This does not mean that parties in a securities action are held to a higher standard with regards to compliance: "Significantly, however, '[t]he PSLRA … does not in any way purport to alter the *substantive standards for finding a violation of Rule 11*, but functions merely to reduce courts' discretion in choosing whether to conduct the Rule 11 inquiry at all and whether and how to sanction a party once a violation is found." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 579 F.3d 143, 152 (2d Cir. 2009) (emphasis in original) (citing *Simon DeBartolo Grp., L.P. v. Richard E. Jacobs Grp., Inc.*, 186 F.3d 157, 167 (2d Cir. 1999)).

5.    Under Rule 11(b), an attorney who presents a "pleading, written motion, or other paper" to the Court certifies that, "to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances":

(1)    it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

(2)    the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

(3)    the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

> (4)     the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b)(1)-(4); *accord Kropelnicki v. Siegel*, 290 F.3d 118, 131 (2d Cir. 2002).

6.     "Rule 11(b)(3), which requires that all 'factual contentions have evidentiary support,' is violated where 'after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well grounded in fact.'" *In re Proshares Tr. II Sec. Litig.*, No. 19-cv-886-DLC, 2021 WL 2548765, at *1 (S.D.N.Y. Jun 22, 2021) (Cote, J.) (quoting *Kropelnicki*, 290 F.3d at 131). "[C]ourts must 'ensure that any sanctions decision is made with restraint,'" *Id.* at *1 (quoting *Storey v. Cello Holdings, LLC*, 347 F.3d 370, 387 (2d Cir. 2003)). "'Rule 11 sanctions are a coercive mechanism, available to trial court judges, to enforce ethical standards upon attorneys appearing before them, while being careful not to rein in zealous advocacy.'" *Id.* at *1 (quoting *Kiobel v. Millson*, 592 F.3d 78, 83 (2d Cir. 2010)).

7.     "An erroneous statement of fact in a pleading can give rise to the imposition of sanctions only when the particular allegation is 'utterly lacking in support.'" *In re GE Sec. Litig.*, No. 19-cv-1013-DLC, 2021 WL 2688695, at *3 (S.D.N.Y. June 30, 2021) (Cote, J.) (quoting *Kiobel*, 592 F.3d at 81). Similarly, regarding legal arguments, Rule 11 is violated only "where it is patently clear that a claim has absolutely no chance of success under the existing precedents." *Eastway Constr. Corp. v. N.Y.C.*, 762 F.2d 243, 254 (2d Cir. 1985); *see also Fishoff v. Coty Inc.*, 634 F.3d 647, 654 (2d Cir. 2011) ("The operative question is whether the argument is frivolous, *i.e.*, the legal position has 'no chance of success,' and there is 'no reasonable argument to extend, modify or reverse the law as it stands."). "The fact that a legal theory is a long-shot does not necessarily mean it is sanctionable." *Fishoff*, 634 F.3d at 654; *see also Rubenstein v. Live Nation Entm't*, 272 F. Supp. 3d 544, 547

4

(S.D.N.Y. 2017) (denying sanctions where "Plaintiff's position, though a 'longshot,' fell short of frivolity.").

8.  Therefore, the fact that a "Plaintiff's claims failed to pass the motion-to-dismiss threshold does not mean that they clearly had no chance of success." *Okla. L. Enforcement Ret. Sys. v. Telefonaktiebolaget LM Ericsson*, No. 18-cv-03021-JMF, 2020 WL 1228664, at *1 (S.D.N.Y. Mar. 13, 2020) (finding that "[a]lthough the Court concluded that the SAC failed adequately to plead the elements of falsity and scienter … Plaintiffs and their counsel … asserted claims and legal contentions warranted by existing law."); *see also In re Merrill Lynch Tyco Research Sec. Litig.*, No. 03-cv-4080-MP, 2004 WL 305809, at *5 (S.D.N.Y. Feb. 18, 2004) (concluding that "[a]lthough the Court finds . . . that Plaintiff's allegations of loss causation are insufficient, this does not mean that Plaintiff's claim is so unreasonable that it had absolutely no chance of success.") (internal quotation marks omitted). "[T]he Second Circuit has counseled that '[a] distinction must be drawn between a position which is merely losing and one which is both losing and sanctionable." *Black v. Ganieva*, 2022 WL 2354916, at *13 (S.D.N.Y. June 30, 2022) (quoting *Sec. Indus. Ass'n v. Clarke*, 898 F.2d 318, 321 (2d Cir. 1990)). However, "the point at which an argument turns from merely 'losing' to losing *and* sanctionable is often difficult to discern." *Id.* (emphasis in original) (quoting *Motown Prods., Inc. v. Cacomm, Inc.*, 849 F.2d 781, 785 (2d Cir, 1988)). Ultimately, the Second Circuit has "stressed that any and all doubts must be resolved in favor of the signer [of the pleading]." *Stern v. Leucadia Nat'l Corp.*, 844 F.2d 997, 1005 (2d Cir. 1988) (internal citation omitted).

## II.    Procedural History of the Action

9.    The first complaint against Defendants, *Thomas v. Riskified, Ltd., et al.*, No. 1:22-cv-03545 (S.D.N.Y.), was filed on May 2, 2022, by Philip G. Thomas, represented by the law firms Robbins Geller Rudman & Dowd LLP and Johnson Fistel, LLP. The case was initially assigned to the Honorable Vernon S. Broderick. Pursuant to 15 U.S.C. § 78u-4(a)(3)(A)(i), on the same day, the first notice that a class action had been initiated against Defendants was published on *PRNewswire*, a widely circulated national business-oriented wire service, advising members of the proposed Class of their right to move the Court to serve as Lead Plaintiff no later than July 1, 2022.

10.    Three movants represented by experienced and reputable law firms timely submitted motions seeking appointment of lead plaintiff and approval of lead counsel: (1) Mr. Black, represented by Rosen Law, ECF No. 25; (2) Weijuan Xu, represented by Pomerantz LLP, ECF No. 28; and (3) Josh S. Grewal, represented by Robbins Geller Rudman & Dowd LLP, ECF No. 31.

11.    Xu and Grewal later filed non-opposition notices, acknowledging that they did not have the largest financial interest in the matter. ECF Nos. 36-37.

12.    On August 17, 2022, the case was reassigned to the Hon. Denise L. Cote. That same day, the Court entered a Case Management Order appointing Mr. Black as Lead Plaintiff and approving his selection of Rosen Law as Lead Counsel. ECF No. 45. In the same Order, the Court also directed Lead Plaintiff to "file an amended complaint for this action and any actions subsequently consolidated with it on or before September 1, 2022," and directed Defendants to "file an answer to the amended complaint or a motion to dismiss the amended complaint by September 30, 2022." *Id.* at 5. The Court also provided that "[i]f

a motion to dismiss the amended complaint is filed, Lead Plaintiff shall file a letter by October 14, 2022 indicated a desire to further amend its complaint in response to the motion," and that "[a]ny amended complaint must be filed by October 28, 2022." *Id.*

13.    On August 26, 2022, the parties jointly moved for a modest extension of the deadlines from the Case Management Order, ECF No. 63, which the Court granted. ECF No. 64.

14.    Plaintiffs timely submitted the FAC on September 15, 2022. ECF No. 65. The FAC was signed and filed by Joshua Baker of Rosen Law. *Id.*

15.    The FAC alleged violations of Section 11 of the Securities Act of 1933 ("Securities Act") against Riskified, certain of Riskified's executive officers and directors, and the underwriters of Riskified's IPO, and violations of Section 15 of the Securities Act against the officers and directors, on behalf of a putative class of persons and entities who purchased Riskified's Class A ordinary shares pursuant and/or traceable to the registration statement filed in connection with Riskified's IPO ("Registration Statement"). *See* FAC ¶ 1. As alleged in the FAC, Riskified's core product is the "Chargeback Guarantee," which offers fraud protection services to Riskified's merchant clients. FAC ¶ 3. A chargeback is when online merchants receive and accept orders from customers, but the customer later successfully disputes that charge through their credit card bank, the merchant loses those funds. *Id.* Riskified uses its proprietary machine learning-based platform to review pending transactions for fraud risk, receiving a percentage of the gross value for transactions approved, and reimbursing merchants for any approved transactions that result in chargebacks. FAC ¶ 5. Reimbursements for chargebacks make up most of Riskified's cost of revenues, and thus were critical to the company's profit margins. FAC ¶ 6.

16. As the FAC alleged, some clients were "riskier" than others, meaning they had higher chargeback rates and lower margins for Riskified. FAC ¶ 78. Clients in new industries, and clients in certain industries like travel, cryptocurrency, and payments/remittance industries were "riskier." FAC ¶¶ 79-91. Leading up to the IPO, Riskified began adding more major new clients and more rapidly expanding into new and "riskier" industries in order to show off revenue growth for investors, affecting Riskified's "merchant mix," or the proportion of profits/revenues coming from different clients. FAC ¶ 100-103. However, the FAC alleged that due to Riskified's months-long onboarding process involving the review of at least six months of historical data on chargeback rates, Riskified knew that those clients were likely to have higher chargebacks and lower margins, and thus would contribute materially to depressed margins for Riskified as a whole as those clients went "live" on Riskified's platform as they completed the onboarding process in the months following the IPO. *See* FAC ¶ 92-100.

17. As the FAC alleged, in the months after the IPO, Riskified's stock price plunged as the company announced a series of disappointing quarterly and annual financial results, highlighted by sagging profit margins. FAC ¶ 14. Riskified's executives revealed during earnings calls that those margin shortfalls were a result of the company's expanding exposure to new and riskier industries with higher chargebacks and lower margins. *Id.* The FAC alleged that those trends were known at the time of the IPO but had not been disclosed in the Registration Statement. *Id.* Analyst reports called attention to the profit margin shortfalls and reduced their ratings and price targets for Riskified's securities based in part on those margins. *Id.* The negative trends continued to materialize over the next few quarters, and Riskified's stock price fell from the IPO price of $21 per share to below $6 per share. FAC ¶¶ 104, 177. The FAC alleged

8

that, as a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of Riskified's securities that resulted therefrom, Plaintiffs and other Class members suffered significant losses and damages. FAC ¶¶ 19, 177.

18. In preparing the FAC, which consisted of 206 numbered paragraphs and 46 pages, Rosen Law conducted an extensive factual investigation that included, among other things: (i) obtaining and reviewing U.S. Securities and Exchange Commission ("SEC") filings and press releases by Riskified, transcripts of Riskified's earnings calls, dozens of analyst reports covering Riskified's securities, and dozens of news articles and other publications about Riskified; and (ii) retaining and overseeing the services of investigators at On Point and LapidIM to identify additional relevant information about Riskified and the allegations of the initial complaint and FAC, including identifying and conducting interviews with former employees of Riskified, six of whom were cited or quoted in the FAC. Baker Decl. ¶ 7.

19. On October 28, 2022, Defendants, represented by Paul, Weiss, Rifkind, Wharton & Garrison LLP (for Riskified and its officers and directors) and Simpson Thacher & Bartlett LLP (for the underwriters), filed a joint motion to dismiss the FAC pursuant to Fed. R. Civ. P. Rule 12(b)(6) as well as a memorandum and declaration in support of the motion. ECF Nos. 71-73. Defendants did not assert in connection with their motion that any violations of Rule 11 by Lead Plaintiff or Lead Counsel had occurred.

20. On November 14, 2022, pursuant to the Case Management Order, Plaintiffs filed a joint letter whereby Plaintiffs indicated their intent to further amend their complaint in response to Defendants' motion to dismiss the FAC, and the parties proposed a briefing

schedule for Defendants' anticipated motion to dismiss Plaintiffs' SAC. ECF No. 75. The Court entered the proposed pleading schedule. ECF No. 76.

21.     On November 28, 2022, Plaintiffs timely filed the SAC. ECF No. 77. The SAC was signed and filed by Joshua Baker of Rosen Law. *Id.*

22.     The SAC alleged the same claims as the FAC, but bolstered Plaintiffs' allegations with additional factual support. Chiefly, Plaintiffs added new corroborative allegations from several additional former Riskified employees, strengthening Plaintiffs' allegations that the trend in Riskified's merchant mix was known but not disclosed at the time of the IPO. *See* SAC ¶¶ 82-108.

23.     On January 20, 2023, Defendants filed a joint motion to dismiss the SAC pursuant to Fed. R. Civ. P. Rule 12(b)(6) as well as a memorandum and declaration in support of the motion. ECF Nos. 78-80. Once again, Defendants did not assert in connection with their motion that any violations of Rule 11 by Lead Plaintiff or Lead Counsel had occurred.

24.     On February 21, 2023, Plaintiffs submitted a memorandum in opposition to Defendants' motion to dismiss the SAC. ECF No. 81. This motion set forth the nonfrivolous legal bases for Plaintiffs' claims, citing over 50 cases in support of Plaintiffs' positions, and was composed of good faith arguments rooted in existing precedent.

25.     On March 16, 2023, Defendants submitted their reply brief in further support of their motion. ECF No. 85.

26.     On May 2, 2023, Defendants submitted a notice of supplemental authority with respect to their motion to dismiss the SAC. ECF No. 86. Plaintiffs responded the following day. ECF No. 87. On May 9, 2023, Plaintiffs submitted a notice of supplemental authority

with respect to their opposition to Defendants' motion to dismiss the SAC. ECF No. 88. Defendants responded on May 15, 2023. ECF No. 89.

27.    In total, Rosen Law attorneys and legal staff have spent over 320 hours working on this matter. Baker Decl. ¶ 11.

28.    On June 2, 2023, the Court entered an Opinion and Order granting Defendants' motion to dismiss the SAC with prejudice ("MTD Order"). ECF No. 92. The Clerk filed a judgment and closed the matter that same day. ECF No. 93.

29.    On June 23, 2023, the Court ordered Plaintiffs to file a submission regarding its compliance with Rule 11(b) by July 14, 2023. ECF No. 94. In response, Plaintiffs and Lead Counsel submit the instant proposed findings of fact and conclusions of law.

### III.    Proposed Findings of Fact Regarding Plaintiffs' Compliance with Rule 11

30.    The FAC alleged that Riskified's Registration Statement misleadingly omitted material facts and failed to disclose known trends in violation of SEC disclosure requirements, regarding the shift in Riskified's merchant mix that was likely to materially impact the company's financial results after the IPO. Ultimately, the Court found that the SAC did not plead sufficient facts to support the existence of a material known trend in Riskified's merchant mix at the time of the IPO, MTD Order at 17-21, and that the Registration Statement adequately warned investors of the risk of potential changes in the company's profit margins. *Id.* at 22-25. The Court also found that the statements in Riskified's Registration Statement that Plaintiffs alleged were misleading by omitting material facts were not actionably misleading. *Id.* at 26-31.

31.    The MTD Order begins with a factual background, with facts drawn from the SAC. MTD Order at 2-13. This background includes allegations attributed to confidential

witnesses cited in the SAC. *Id.* at 4. The Order did not include a finding that these factual allegations were lacking in evidentiary support or that the confidential witnesses were not credible.

32.     The Order then set out the applicable pleading standard under Rule 12(b)(6) and detailed the required elements of claims under Sections 11 and 15 of the Securities Act, including the standards for liability based on false or misleading statements or omissions of material fact. MTD Order at 14-17.

33.     In the MTD Order, the Court examined Plaintiffs' allegations that Riskified's Registration Statement misleadingly omitted known facts or trends that were likely to have a material impact on Riskified's financial performance after the IPO, and that those same omitted facts rendered certain statements contained in the Registration Statement materially misleading. First, the Court found that Plaintiffs "have not plausibly pled that, at the time of the IPO, any trend existed of shifting Riskified's overall merchant mix to include a greater proportion of risky clients." MTD Order at 19. Specifically, the Court noted that the SAC failed to identify specific clients added prior to the IPO who had higher chargebacks and lower margins, and the quantitative impact those clients would have on the company's overall merchant mix and margins. *Id.* at 19-20. The Court found that Plaintiffs' allegations that Riskified's CFO made comments attributing lower margins to "several" new clients in new industries during the last pre-IPO quarter were "insufficient to plausibly plead a trend towards riskier clients leading up to the IPO." *Id.* at 21. The Court also found that Riskified's risk disclosures were adequate to warn investors of the allegedly concealed risks. *Id.* at 21-25. Finally, the Court found that the eight statements in the Registration Statement that Plaintiffs challenged were not misleading "in the context of the entire Registration Statement." *Id.* at 26-31.

34.     The Court finds, as a matter of fact, that neither Plaintiffs nor Lead Counsel violated the standards imposed by Rule 11(b). No claims were harassing, frivolous, or utterly lacking in evidentiary support, rather, they were grounded in facts discovered in the course of a detailed investigation, the body of securities law, and applicable legal precedent. Plaintiffs undertook adequate efforts to investigate and develop factual and other support for their claims. In addition to their own investigation, Lead Counsel utilized the services of experienced third-party investigators to investigate the factual predicate for the claims alleged. *See* Baker Decl. ¶ 7-9. Plaintiffs then based their allegations on the facts developed through that investigation. *Id*. ¶ 10. Plaintiffs and Lead Counsel further protected the interests of the Class by opposing Defendants' motion to dismiss the SAC, in a memorandum of law reflecting good faith arguments rooted in existing precedent. In fact, counsel has represented that Rosen Law has spent over 320 hours working on this case. *Id*. ¶ 11. That level of diligence by Plaintiffs and Lead Counsel supports a finding that they complied with the requirements of Rule 11.

35.     As a matter of fact, therefore, Plaintiffs and their counsel exercised diligence and developed a reasonable basis to assert Plaintiffs' pleadings, arguments, and positions during this litigation.

### IV.     Proposed Conclusions of Law

36.     As discussed above, under 15 U.S.C. § 78u-4(c)(1), courts make "specific findings regarding compliance by each party and each attorney representing any party with each requirement of Rule 11(b)." Plaintiffs' and Lead Counsel's compliance with each subsection of Rule 11(b) is discussed below.

13

37.     With regard to Rule 11(b)(1), when Lead Counsel submitted Plaintiffs' pleadings and other papers to the Court in this action, they certified that those submissions were not "presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." Fed. R. Civ. P. 11(b)(1). Based upon the record before the Court and the findings of fact above, the Court concludes, as a matter of law, that neither Plaintiffs nor Lead Counsel have presented any pleading, written motion, or other paper for any improper purpose, whether to harass, cause unnecessary delay, or needlessly increase the cost of the litigation. Plaintiffs claim they suffered losses of over $600,000 in Riskified securities as alleged in the FAC and SAC (*see* ECF No. 27-3) and that other members of the Class likewise suffered economic damages as a result of their investment in Riskified. SAC at ¶ 19, 189. Reasonably believing Defendants' allegedly false and misleading omissions in the Registration Statement to be the cause of these losses, Plaintiffs sought to hold Defendants liable for economic damages. Such justification is appropriate and proper and in compliance with Rule 11(b)(1). *See, e.g., Sussman v. Bank of Israel*, 56 F.3d 450, 458 (2d Cir. 1995) ("If a reasonably clear legal justification can be shown for the filing of the paper in question, no improper purpose can be found and sanctions are inappropriate"); *Manchester Mgmt. Co., LLC v. Echo Therapeutics, Inc.*, 297 F. Supp. 3d 451, 470 (S.D.N.Y. 2018) (declining to impose sanctions when "Plaintiffs' arguments did not carry the day, but neither did they strike the Court as vexatious."); *cf. ATSI*, 579 F.3d at 154 n.11 (sanctions for improper purpose would have been appropriate if plaintiff had sued defendant "in order to obtain access to discovery that would have been more difficult to obtain from a third-party."). The Court, therefore, finds that Plaintiffs and Lead Counsel complied with the requirements of Rule 11(b)(1).

38.    With regards to Rule 11(b)(2), when Lead Counsel submitted Plaintiffs' pleadings and other papers to the Court in this action, they certified that Plaintiffs' "claims, defenses, and other legal contentions [were] warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P. 11(b)(2). While the Court concluded that the misstatements alleged in the SAC were not actionable, Plaintiffs, through Lead Counsel, made arguments supported by existing law as to the misleading nature of the omitted facts and the existence of undisclosed material trends.

39.    For example, in their memorandum of law in opposition to Defendants' motion to dismiss the SAC (ECF No. 81, "Opp."), Plaintiffs argued that by the time of Riskified's IPO, the company had at least six months of extensive transaction data from new clients it was onboarding, including chargeback rates, demonstrating that Riskified "had reasonably good visibility" into the chargeback rates and margins of the new clients, which "further supports the inference that [the company] knew" or "was able to know" of the undisclosed trends. Opp. at 13 (citing *In re CPI Card Grp. Inc. Sec. Litig.*, No. 16-CV-4531 (LAK), 2017 WL 4941597, at *4 (S.D.N.Y. Oct. 30, 2017) (finding the plaintiffs adequately alleged claims under Sections 11 and 15 based on allegations of undisclosed Item 303 trends)). As Plaintiffs pointed out in their opposition brief, post-IPO admissions from Riskified's CEO and CFO support the allegations that Riskified had begun onboarding riskier clients prior to the IPO, which was reasonably likely to depress profit margins going forward. Opp. at 14-15 (citing *Moab Partners, L.P. v. Macquarie Infrastructure Co.*, No. 21-2524, 2022 WL 17815767, at *3 (2d Cir. Dec. 10, 2022) ("even if Defendants could not determine with certainty that [a trend would occur], they were required to evaluate [the trend's] consequences on the assumption that it would come to

fruition and to disclose its potential impact unless Defendants determined that a material effect on the registrant's financial condition or results of operations is not reasonably likely to occur."). Plaintiffs also argued that the timing of the admissions of lowered margins attributed to changes in merchant mix immediately following the IPO further supports a finding that the trend existed and was known at the time of the IPO. *Id.* at 15-16 (citing *CPI Card*, 2017 WL 4941597, at *4, and *In re Honest Co. Sec. Litig.*, No. 221CV07405MCSPLA, 2022 WL 2856024, at *4 (C.D. Cal. July 18, 2022)). While these arguments did not persuade the Court that the facts of the SAC were sufficient to establish an undisclosed known material trend, they are not the type of frivolous arguments which would be sanctionable under Rule 11.

40.    Similarly, while Plaintiffs acknowledged that the Registration Statement disclosed that Riskified's gross profit margin "may fluctuate from period to period," and that the metric "is highly dependent on…the merchant mix of our revenue, and new geographies and industries into which we may enter," among other factors, Plaintiffs argued that this sort of generic risk disclosure was itself misleading and "do[es] not shelter defendants from liability if they fail to disclose hard facts critical to appreciating the magnitude of the risks described." Opp. at 21 (quoting *In re Am. Int'l Grp., Inc. 2008 Sec. Litig.*, 741 F. Supp. 2d 511, 531 (S.D.N.Y. 2010). Plaintiffs argued that the statement that merchant mix is one factor that *may* affect profit margins, which *may fluctuate*, was insufficient to apprise investors of the known trend in Riskified's merchant mix toward lower-margin clients, which was *likely* to drag down the Company's gross profit margin. Opp. at 21-22 and n.14 (citing *In re iDreamSky Tech. Ltd. Sec. Litig.*, 236 F. Supp. 3d 824, 831 (S.D.N.Y. 2017) (generalized disclosures of potential risks were "insufficient to shield Defendants from their obligation to disclose known risks that had already materialized by the time of the IPO"); *Facebook*, 986 F. Supp. 2d at 516; *Edison Fund v. Cogent Inv. Strategies Fund, Ltd.*,

551 F. Supp. 2d 210, 226 (S.D.N.Y. 2008) ("the inclusion of general cautionary language regarding a prediction would not excuse the alleged failure to reveal known material, adverse facts.")); "[T]o warn that the untoward may occur when the event is contingent is prudent; to caution that it is only possible for the unfavorable events to happen when they have already occurred is deceit." *In re Bear Stearns Cos., Inc. Sec., Deriv., and ERISA Litig.*, 763 F. Supp. 2d 423, 495 (S.D.N.Y. 2011). As such, it was not "patently clear" that Plaintiffs' claims regarding the risk disclosures in the Registration Statement had "absolutely no chance of success under the existing precedents." *Eastway Constr. Corp.*, 762 F.2d at 254.

41.    Ultimately, the Court simply disagreed with Plaintiffs as to whether the SAC alleged sufficient facts to establish an undisclosed known material trend in Riskified's merchant mix. The SAC alleged that by the time of the IPO, the Company already had years of transaction data from its major travel industry clients, and at least six months of data from the lengthy onboarding process for all new clients. Opp. at 13 (citing SAC ¶¶ 87-90, 94, 97-103, and 179). Plaintiffs argued that the SAC alleged that Riskified used this wealth of data to help the Company's management set their expectations for chargeback rates for a given client, and that the Company's data team reported their findings to Riskified's management, who also had direct access to the data, giving Riskified's management a strong grasp of the chargeback rates to expect for new clients prior to and while onboarding the client. *Id.* (citing SAC ¶¶ 97, 102, 104-105). Plaintiffs argued that the SAC's allegations that Riskified used "tons" of historical data to set internal targets for individual and industry chargeback rates was enough to make the trend in merchant mix known at the time of the IPO. *Id.* (citing SAC ¶¶ 80-81, 97, 104-105). Plaintiffs also argued that the SAC adequately alleged that the Company was, or had completed, onboarding multiple major new clients from riskier industries at the time of the IPO. *Id.* at 14. Plaintiffs argued

17

that former Riskified employees, Riskified's management, and securities analysts all recognized that Binance and the "global money movement remittance and payments company" who started or completed onboarding during the quarter prior to the IPO were major new clients. *Id.* (citing SAC ¶¶ 94, 179, 185-187). The SAC also alleged that Riskified's CFO admitted that Riskified had "started reviewing orders for several new large merchants, who completed the platform onboarding process during the [second] quarter," which ended prior to the IPO, and that "several of these merchants also operate in online payment categories that Riskified has not previously served." *Id.* (citing SAC ¶ 156). Accordingly, it cannot be said that Plaintiffs' allegations was "utterly lacking in support." *In re GE Sec. Litig.*, 2021 WL 2688695, at *3. Plaintiffs' allegations were reasonably based on verifiable facts, and as such, are not the types of baseless claims that could violate Rule 11(b). *C.f. ATSI*, 579 F.3d at 149 (affirming the district court's decision to grant sanctions where plaintiffs "lacked any reasonable factual basis" to bring claims against defendant).

42.    Thus, while the Court found Plaintiffs' arguments unpersuasive, they were not unwarranted by existing law. As courts in the Second Circuit have repeatedly noted, "[a] distinction must be drawn between a position which is merely losing, and one which is both losing and sanctionable." *Ganieva*, 2022 WL 2354916, at *13; *see also In re GE Sec. Litig.*, 2021 WL 2688695, at *4-5 (declining to impose sanctions, even where the Court found Plaintiffs' complaint pled three misstatements that it "should not have included" and that "plaintiffs should have exercised a greater degree of care."). Here, Plaintiffs and Lead Counsel zealously advocated on behalf of the putative class, advancing arguments that were neither frivolous nor unwarranted under existing law. Accordingly, the Court finds that Plaintiffs and Lead Counsel complied with Rule 11(b)(2).

18

43.     Under Rule 11(b)(3), when Lead Counsel submitted Plaintiffs' pleadings and other papers to the Court in this action, they certified that their "factual contentions [had] evidentiary support or, if specifically so identified, [would] likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(3). Based upon the record before the Court and the findings of fact above, the Court finds that Plaintiffs and their attorneys engaged in reasonable and adequate efforts to investigate, verify, and confirm the factual allegations in the FAC and SAC. Though the Court found the facts alleged by Plaintiffs to be insufficient to state a claim, the facts had evidentiary support, and may have had additional evidentiary support after a reasonable opportunity for discovery. Dismissal alone does not call into question the reasonable evidentiary basis for the facts alleged. *In re GE Sec. Litig.*, 2021 WL 2688695, at \*3 ("An erroneous statement of fact within a pleading can give rise to the imposition of sanctions only when the particular allegation is utterly lacking in support."). The Court therefore finds that Plaintiffs and Lead Counsel complied with the requirements of Rule 11(b)(3).

44.     Under Rule 11(b)(4), a party certifies "the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information." Fed. R. Civ. P. 11(b)(4). As Plaintiffs have not sought to deny any factual contentions, this provision is inapplicable to the present findings.

## V.     CONCLUSION

45.     The Court has determined, based on the foregoing findings of fact and conclusions of law, that Plaintiffs and Lead Counsel fully complied with Rule 11(b) of the Federal Rules of Civil Procedure in the above-referenced Action.

Dated: July 14, 2023                          Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

By: */s/Joshua Baker*
Laurence M. Rosen
Phillip Kim
Joshua Baker
275 Madison Avenue, 40th Floor
New York, NY 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: lrosen@rosenlegal.com
        pkim@rosenlegal.com
        jbaker@rosenlegal.com

*Lead Counsel for Plaintiffs and the Class*

20